IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DWAYNE STOUTAMIRE, | ) | CASE NO. 1:16 CV 2840 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| LT. TIMOTHY HICKS, *et al.*, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendants. | ) | |

## Introduction

Before me by referral[1] is Dwayne Stoutamire's *pro se* prisoner civil rights action against Lt. Timothy Hicks, Julie Hensley, and Polly Schmalz, apparently asserted under 42 U.S.C. § 1983.[2] Here, the defendants have moved for summary judgment.[3] Stoutamire opposes that motion[4] and the defendants have replied to that opposition.[5] Moreover,

---

[1]ECF # 5.

[2]ECF # 1.

[3]ECF # 24.

[4]ECF # 26.

[5]ECF # 27.

Stoutamire has moved to amend his petition to name additional defendants,[6] which motion is opposed by the defendants.[7] Stoutamire has replied to that opposition.[8]

For the reasons that follow, I will recommend that the defendants' motion for summary judgment[9] be granted and that all claims against them be dismissed with prejudice. Further, I also will recommend that Stoutamire's motion to amend[10] be denied as moot and/or futile.

## Facts

The essential facts of both claims are not complex and are substantially not contested.

### A. Excessive Force Claim

The claim here involves an incident that took place in November 2014 as Stoutamire was being taken to a prison office to complete a report of a prior claim of excessive force. While an officer was unlocking cell doors to release prisoners for recreation, the lock to Stoutamire's cell door initially malfunctioned and Stoutamire began kicking the door to get the officer's attention.[11] Although the officer told Stoutamire that it was not necessary to

[6]ECF # 31.

[7]ECF # 32.

[8]ECF # 33.

[9]ECF # 24.

[10]ECF # 31.

[11]ECF# 24, Ex. 1 at 10 (prison use of force report).

cause a disturbance and proceeded to unlock the door, Stoutamire became belligerent and told the officer he would "kick her ass."[12]

Following this incident, Stoutamire, now apparently handcuffed, was brought to the captain's office.[13] There he was uncuffed, and according to Stoutamire, he was pushed into a wall by Hicks while another officer hit him twice in the stomach, followed by Hicks striking him on the face.[14] Hicks, in his affidavit, states that the encounter in the office began with him asking Stoutamire why he had been uncooperative with the officer concerning the doors, and then telling Stoutamire to write his report of the incident that had just occurred.[15] Hicks stated that Stoutamire then became verbally uncooperative and hostile, telling Hicks, "I ain't taking nobody's shit."[16]

In his affidavit, Hicks states that he then ordered Stoutamire to give him his name and inmate number.[17] According to Hicks, Stoutamire responded by "stepping toward [Hicks] in a hostile manner, with his hands up."[18] Hicks states that he thereupon put up a "flinch

---

[12]*Id.*

[13]*Id.* at 17.

[14]ECF # 26, Ex. D (Stoutamire affidavit).

[15]ECF # 24, Ex. 7 (Hicks affidavit at ¶¶5-6).

[16]*Id.* at ¶7.

[17]*Id.* at ¶8.

[18]*Id.*

block" in an attempt to "back [Stoutamire] away from me."[19] When Hicks perceived that Stoutamire appeared to be "getting ready to strike me," and so presented "a danger to my physical well-being," Hicks used a single burst of pepper spray to Stoutamire's face "to protect myself and to restore order to the situation."[20]

Stoutamire, for his part, claims he never put his hands up in a fighting position, but instead suggests he may have been "talking with my hands."[21] He also denies stepping toward Hicks in an aggressive manner.[22] Although Stoutamire agrees that Hicks used pepper spray, he argues that the use of pepper spray in this context was excessive because Hicks was one of three officers in the room and so "they could have restrained [him] without having to mace [him] or punch [him]."[23]

The incident of Stoutamire kicking at his cell door and the incident of Lt. Hicks employing pepper spray were initially the subject of separate use of force reports.[24] The deputy warden reviewed the written statements and sent the matter for investigation.[25] That investigation, which considered both events as part of the same incident, found on March 23,

---

[19] *Id.*

[20] *Id.* at ¶9.

[21] ECF # 26 at 17.

[22] *Id.*, Ex. D.

[23] ECF # 26 at 21.

[24] ECF # 24, Ex. 1.

[25] *Id.*

2015, that Lt. Hicks perceived himself to be in jeopardy from an inmate in a position to do him harm and reacted with a response "commensurate with the amount of force necessary to control the situation."[26] The report also took note that Stoutamire had refused any medical treatment.[27] On March 26, 2015, the warden concurred in these findings and recommended no discipline for the officers involved.[28]

On November 18, 2014, while this process was ongoing and not yet complete, Stoutamire submitted a handwritten note stating that he did not know how to pursue a use of force complaint against a "high ranking officer" such as a lieutenant.[29] The handwritten response on this note states that all use of force complaints are not grievable, but that such complaints are reviewed by the warden who then decides if a committee is to be assigned to investigate the complaint.[30] Indeed, Stoutamire was informed just a few weeks later that the two incidents would be investigated as a single matter, and the results of the investigation would be forwarded to the warden.[31]

---

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] ECF # 26, Ex. 3.

[30] *Id.*

[31] ECF # 24, Ex. 1.

The defendants here assert that Stoutamire has not exhausted this claim under the Ohio prisoner grievance process.[32] Stoutamire agrees that this claim was not taken through all three steps of that process, but argues that to have done so in this case would have been futile.[33]

**B. Medical**

Here, Stoutamire appears to claim that defendants Schmalz and Hensley were deliberately indifferent to his medical needs. In this regard, Stoutmire submitted an informal grievance notice to Hensley complaining that he needed medical attention, specifically surgery, for his feet.[34] According to Stoutamire, Hensley responded stating that "[his] issues do not warrant any type of surgery and that I should take care of it when I go home upon my release."[35] Stoutamire thereupon raised the matter with the institutional inspector, or at step two of the grievance process.[36] In a written response, the institutional inspector told Stoutamire that surgery for his heel spurs was not medically necessary or mandatory under the applicable medical guidelines.[37] The inspector made a point of noting in his reply

---

[32]ECF # 24 at 17-18.

[33]ECF # 26 at 5-6.

[34]*Id.*, Ex. C.

[35]*Id.*, Ex. D.

[36]*Id.*, Ex. E.

[37]*Id.*

denying this grievance that Stoutamire "may appeal this decision to the Chief Inspector within 14 calendar days."[38]

Notwithstanding this indication of an available remedy, Stoutamire, by his own admission in this matter, chose not to proceed to the third step of Ohio's prisoner grievance process.[39] As was the case with the use of force claim, the defendants argue that Stoutamire's failure to fully exhaust available administrative remedies as to this claim entitles the defendants to summary judgment.

## Analysis

### A. Standard of review

The court should grant summary judgment if satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[40] The moving party bears the burden of showing the absence of any such "genuine issue":

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[41]

---

[38]*Id.*

[39]ECF # 26 at 6.

[40]Fed. R. Civ. P. 56(c).

[41]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[42] Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[43] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[44]

The court should grant summary judgment if a party who bears the burden of proof at trial establishes each essential element of his case.[45] Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[46]

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[47] The nonmoving party may not simply rely on its pleadings but must "produce evidence that results in a conflict of material fact to be solved by a jury."[48] Moreover, if the nonmovant presents evidence "merely colorable" or not "significantly probative," the court

---

[42]*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[43]*Id.* at 252.

[44]*U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[45]*McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex*, 477 U.S. at 322).

[46]*Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[47]*Id.* at 256.

[48]*Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

may decide the legal issue and grant summary judgment.[49] "In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[50]

In sum, proper summary judgment analysis entails the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[51]

**B. Application of standard**

***1. Prison Litigation Reform Act and Ohio procedure***

Under the Prison Litigation Reform Act ("PLRA"), prisoners filing a claim under federal law, including an excessive use of force claim asserted pursuant to 42 U.S.C. § 1983, must first exhaust available administrative remedies.[52] In order to satisfy this requirement, the prisoner must complete the administrative review procedure in accordance with the applicable procedural rules.[53] Failure to exhaust is an affirmative defense, and plaintiffs are not required to either plead or demonstrate exhaustion in the pleadings.[54] In this sense,

---

[49] *Anderson*, 477 U.S. at 249-50 (citation omitted).

[50] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[51] *Anderson*, 477 U.S. at 250.

[52] *Porter v. Nussle*, 534 U.S. 516, 532 (2002); 42 U.S.C. § 1997e(a).

[53] *Woodford v. Ngo,* 548 U.S. 81, 93-94 (2006).

[54] *Jones v. Bock*, 549 U.S. 199, 216 (2007).

exhaustion is not a jurisdictional predicate but is nonetheless mandatory,[55] and so is required even if proceeding through the administrative procedure would appear to be futile.[56]

Ohio by statute has established a three-step process for addressing inmate grievances.[57] In short, the inmate must first present the matter informally to the supervisor directly responsible for the subject matter of the complaint.[58] If the complaint is not satisfactorily resolved at that level, the inmate must then timely notify the inspector of institutional services.[59] The final step is an appeal to office of chief inspector.[60]

***2. Excessive force claim***

Here, the defendants assert that Stoutamire failed to exhaust his administrative remedies by employing all three steps of Ohio's administrative review process to contest the findings related to this combined incident.[61] Stoutamire agrees, stating that he did not take

---

[55]*Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

[56]*Hartsfield v. Vidor*, 199 F.3d 305, 308-10 (6th Cir. 1999).

[57]*Wolfel v. Collins*, No. 2:07-CV-1296, 2010 WL 5491240, at **2-3 (S.D. Ohio Oct. 7, 2010) (citing Ohio Admin. Code § 5120-9-31), *report and recommendation adopted by Wolfel v. Collins*, 2011 WL 14457 (S.D. Ohio Jan. 4, 2011).

[58]*Id.* at *3 (citation omitted).

[59]*Id.*

[60]*Id.*

[61]ECF # 24 at 18.

the third step of the process for the reason that such a step was futile in light of Inspector Melton's statement in November 2014 that use of force complaints are not grievable.[62]

Under the Ohio prison grievance procedure, a claim may not be grievable to the institutional inspector but may be grievable directly to the chief inspector.[63] Such matters which are grievable directly to the chief inspector, and not at the earlier step of the institutional inspector, are those involving claims against the warden.[64]

Here, as the institutional inspector observed in his reply to Stoutamire, the use of force complaint was being reviewed directly by the warden, who would then appoint a committee to investigate the claim.[65] As the record shows, the warden then adopted the committee's findings that the force used was justified, meaning that the final result – which Stoutamire presumably wanted to contest – was a decision of the warden, which action, as noted earlier, would not be grievable to the institutional inspector, but could be directly grieved to the chief inspector.

Thus, the institutional inspector's comment about the matter not being grievable was correct, as it applied to him. The institutional inspector was also correct in pointing out that the matter would be reviewed by the warden and then potentially by a committee, whose

---

[62]ECF # 26 at 5.

[63]*Dennis v. Taft*, No. C2-04-532, 2004 WL 4506891, at *5 (S.D. Ohio Sept. 24, 2004).

[64]*Id.* at *6 (citing Ohio Admin. Code § 5120-9-31(L)).

[65]ECF # 26, Ex. 3.

results were again subject to the warden. What was not explicitly stated in the note was that any final decision of the warden in this regard could be grieved to the office of the chief inspector, but not the institutional inspector. It is this step, available under the rules in situations such as this, that Stoutamire admittedly did not take.

Even a sincere belief by Stoutamire that it would be futile to use the last step of the grievance process does not excuse his failure to take that step. As was stated by the Sixth Circuit in *Hartsfield*, "an inmate cannot simply. . .abandon the [grievance] process before completion and claim that. . .it is futile for him to [have continued it] . . . ."[66] Or, as was stated by the district court in *Wolfel*, "a subjective belief on the part of an inmate as to what the outcome of his grievance might be will not serve to relieve him of his obligation to exhaust available administrative remedies."[67]

Thus, as to the grievance arising out the 2014 use of force complaint, the fact that Stoutamire, by his own admission, failed to fully exhaust this grievance in Ohio's three-step prison grievance review procedure now "precludes his pursuit in this action of his claim based on those events."[68]

***3. Medical claim***

Stoutamire's failure to fully exhaust the available administrative remedies as to his medical claim is even more clearly shown by the record than was the case with the excessive

---

[66] *Hartsfield*, 199 F.3d at 309.

[67] *Wolfel*, 2011 WL 14457, at *2 (internal quotation and citation omitted).

[68] *Id.*

force claim. In this matter, Stoutamire received the denial of the claim from the institutional inspector with a statement that an additional appeal was available to the chief inspector. Nonetheless, despite this notice of an available next step, Stoutamire elected not to take that step. As a justification for that refusal, Stoutamire contends that he was not required to proceed to the third prong of the grievance process because he is proceeding here under §1983, which does not require the exhaustion of remedies.[69]

In fact, although as a general rule claims brought under § 1983 do not require a plaintiff to have exhausted administrative remedies,[70] the PLRA itself states that:

> [n]o action may be brought with respect to prison conditions under [§ 1983 of this title], or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.[71]

Indeed, the Supreme Court case of *Porter*[72] explicitly held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[73] Thus, Stoutamire cannot here claim to be exempt from the exhaustion requirements of the PLRA because he purportedly asserts a claim under § 1983.

---

[69]ECF # 26 at 5.

[70]*Porter*, 534 U.S. at 523.

[71]42 U.S.C. § 1997e(a).

[72]534 U.S. 516.

[73]*Id.* at 532.

Accordingly, and under the same legal authority cited earlier in connection with Stoutamire's excessive force claim, the defendants are entitled to summary judgment in thier favor on this medical treatment claim because Stoutamire did not exhaust available administrative remedies.

## Conclusion

For the reasons stated, the defendants' motion for summary judgment in their favor as to all claims asserted[74] should be granted. Further, because the dispositive issue as to all claims is Stoutamire's failure to fully exhaust administrative remedies, his motion to amend his complaint[75] should be denied as either moot or futile. The proposed addition of new defendants will not be relevant to the disposition proposed here.

Dated: July 19, 2018

s/ William H. Baughman, Jr.
United States Magistrate Judge

[74]ECF # 24.

[75]ECF # 31.

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[76]

[76] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).