IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DWAYNE STOUTAMIRE, | ) | CASE NO. 1:16CV2840 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| LT. TIMOTHY HICKS, *et al.*, | ) | |
| | ) | **REPORT AND RECOMMENDA-** |
| Defendants. | ) | **TION RE DEFENDANTS' SUM-** |
| | ) | **MARY JUDGMENT MOTION AS** |
| | ) | **TO PLAINTIFF'S EXCESSIVE** |
| | ) | **FORCE CLAIM** |

## I.

Three things come together to determine my recommendation in this report. The first is a legal term of art: excessive force. Dwayne Stoutamire claims prison officials used excessive force when reprimanding him on November 11, 2014. The second is a constitutional protection: the Eighth Amendment. It protects prisoners like Stoutamire against excessive force. The third is a civil rule: Fed. R. Civ. P. 56(a). The three defendant employees of Ohio's prison system want to avoid a trial, so they have asked for summary judgment in their favor pursuant to this rule.

These three things often get tangled up inside a prison. Prison officials need to maintain order and discipline. That critical need requires behavior that doesn't violate the

Eighth Amendment but could be perceived as excessive force were it to occur on the other side of the wall.  The defendants go beyond this need.  They argue that the facts are so cut and dried that there is no genuine dispute as to any material fact and they are entitled to judgment in their favor as a matter of law.  Added to this mix is the law that requires me to review the facts and draw reasonable inferences in the light most favorable to Stoutamire.

The task of untangling these three things leads me to recommend that the defendants' motion for summary judgment be denied.  The facts Stoutamire alleges are sufficient to make out a claim for unlawful excessive force, and genuine issues of material fact remain for a jury to decide.

## II.

Stoutamire has been in prison since 2007.  He is currently incarcerated in the Chillicothe Correctional Institution serving a 34-year sentence.  His sentence arises from convictions on two counts of having a weapon under a disability, one count of felonious assault with a gun specification, one count of abduction with a gun specification, and one count of robbery.[1]

I dealt with Stoutamire's two civil claims of prison mistreatment—alleged excessive force and alleged poor medical treatment—in a prior report and recommendation that adjudicated the defendants' motion for summary judgment.[2]  I decided that Stoutamire had

---

[1]  *See*  https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A532253,  last accessed on 9/1/21.
[2] ECF #24.

failed to exhaust administrative remedies.[3]  The District Judge adopted my recommendations over Stoutamire's objections,[4] but dismissed the claims without prejudice.[5] Stoutamire appealed.[6]

Rather than file a brief, the defendants filed with the Court of Appeals a motion to reverse the judgment, abandoned their exhaustion defense, and conceded that the District Court should address Stoutamire's excessive force claim on the merits.  The Court of Appeals granted their motion.[7]  In its order, though, the Court held that Stoutamire had waived appellate review of the dismissal of his medical treatment claim because he had not addressed that aspect of the judgment in his appellate brief.[8]  Consequently, this case now involves only claim one.[9]  The District Court subsequently referred the remand to me for a report and recommendation "on the merits of the excessive force claim as argued in Defendants' Motion for Summary Judgment."[10]

Claim one reads as follows (my corrections are limited to capitalizations for the ease of reading):

> (Claim One) In the month of November 2014,  a correctional officer wrote a incident report on me and contacted the captains office concerning this incident.  Some time later I was escorted to the captains office.  Once I was brought into this office Lt. Hicks had me before him and maced me in my face while another officer punched

---

[3] ECF #34.
[4] ECF #36.
[5] ECF #37, #38.
[6] ECF #39, #40.
[7] *Stoutamire v. Hicks*, No. 18-3889, 2019 WL 10817292, at *2 (6th Cir. Sept. 25, 2019).
[8] *Id.*
[9] ECF #1, at 3.
[10] ECF #49, at 2.

on me.[11]

Stoutamire's declaration appended to his opposition to the motion for summary judgment provides some additional details from the incident:

> Claim One:  On the 11th of November, 2014, I was transferred from my cell to the captains office due to a incident that transpired between C/O Wensink and myself.  Apond arriving at the captains office I was escorted to this room to the left, inwhich, Lt. Hicks, Lt. Ross, and Lt. Smoot were in this room.  Once in this room, standing before them, Lt. Ross took off my handcuffs and told me that if I made any sudden moves he would mace me, so I placed my hands behind my back.  So Lt. Hicks said I am giving his C/O's problems, so he pushed me into a wall and Lt. Ross hit me in the stomach twice and Lt. Hicks hit me in the cheek.  I then got off the floor and began to look around to see if there was any cameras in this room.  Lt. Hicks seen me looking around and told me that there was no cameras in this office.  At that time Lt. Ross told me to put my hands to my back while he held a can of mace in his hand, I complied to his order.  Lt. Hicks asked me my name and number inwhich I told him.  After I gave him this information I seen Lt. Hicks pull his mace out of his holster and hit the safety switch.  I said I know my rights and that I know that he could not mace me for no reason.  He said that this was Mansfield and he could do whatever he wanted and then he maced me in the face.  They tackled me and knocked me to the ground telling me to stop resisting inwhich they roughed me up and bent my arms and fingers in painful positions.[12]

Hicks provides his side of the story in an affidavit appended to his motion:

> 4.  On November 11, 2014, foot patrol brought Inmate Stoutamire, #A532253, to the Captains office to document an incident that had just occurred between Inmate Stoutamire and Correctional Officer Wensink in which Inmate Stoutamire was being disruptive and making threats towards Correctional Officer Wensink. (Exhibit 1, P. 1, 17).
>
> 5.  While in the Captain's office, Inmate Stoutamire was uncuffed and asked to write a Use Of Force statement regarding the incident with Correctional Officer Wensink. (Exhibit 1, P. 17).

---

[11] ECF #1, at 3.
[12] ECF #26-5, at 1-2.

4

6.  When I asked him why he was refusing to give his name and number to Correctional Officer Wensink, Inmate Stoutamire became belligerent and hostile.  (Exhibit 1, P. 31).

7.  At that point, Inmate Stoutamire stated, "I ain't taking nobody's shit" and stated he doesn't have to tell anyone his name.  (Exhibit 1, P. 29, 31)

8.  I ordered Inmate Stoutamire to tell me his name and inmate number.  At that point, Inmate Stoutamire quickly stepped towards me in a hostile manner, with his hands up.  I immediately used a flinch block response to back him away from me. (Exhibit 1, P. 28, 31)  A flinch block is when you bring your hands up and outward in an attempt to create distance from and to deflect from an attack.

9.  The flinch block was ineffective and Inmate Stoutamire continued to be loud and placed his hands in a fighting stance, appearing to be getting ready to strike me.  I perceived Inmate Stoutamire's actions to be a danger to my physical well-being.  In an effort to protect myself and restore order to the situation, I used a short burst of OC spray to his facial area.  (Exhibit 1, P.29, 31).

10.  At that point, Lt. Ross and I were able to cuff him after a brief struggle on the floor.  Inmate Stoutamire was escorted to the clinic.  No injuries were noted except exposure to OC spray.  (Exhibit 1, P. 29, 31, 37).

11.  No other force was needed or used.  At no time did any officer strike or punch Inmate Stoutamire.  (Exhibit 1, P. 29, 31).

12.  There is no merit as to any of Inmate Stoutamire's claims that excessive use of force was used against him on November 11, 2014.  (Exhibit 1, P. 37).[13]

Hicks cites Exhibit 1, a 40-page attachment to his summary judgment motion.[14]

This exhibit contains additional details and versions of the incident as recounted by both

Hicks and Stoutamire, and compiles other documents related to the incident.  Additional

details and versions of the incident are in Exhibit 2 to Hicks's summary judgment, which

---

[13] ECF #24-7, at 1-2.
[14] ECF #24-1.

includes materials from the proceeding before the Rules Infraction Board,[15] and in Exhibit A to Stoutamire's opposition to the motion for summary judgment.[16]

Since the District Judge dismissed without prejudice claim two alleging poor medical treatment and that claim is no longer subject to appellate review,[17] it would appear that Polly Schmalz and Julie Hensley are no longer defendants in this case. They are associated only with claim two in their roles as a health planning administrator and a nurse supervisor, respectively, in the Ohio prison system.[18] Therefore, for purposes of this report and recommendation, I will assume that Lt. Timothy Hicks is the only defendant.

### III.

*Summary Judgment.* The first thread I untangle is summary judgment. When the Court of Appeals remanded Stoutamire's claim one, the further proceedings it ordered start with consideration of that claim in light of Hicks's motion for summary judgment. Does claim one survive summary judgment? A recommended answer in the negative ends the case. A recommended answer in the affirmative means that Stoutamire's claim one continues, presumably for resolution at trial or by settlement.

Under Fed. R. Civ. P. 56, I must recommend that Hicks's motion be granted if he shows there is no genuine dispute as to any material fact, as supported by record materials identified in the rule, and that he as the movant is entitled to judgment as a matter of law.[19]

---

[15] ECF #24-2, #24, at 20.
[16] ECF #26-2.
[17] ECF #64, at 1; *Stoutamire*, 2019 WL 10817292, at *2.
[18] ECF #24, at 10; ECF #24-6, at 1.
[19] Fed. R. Civ. P. 56(a), (c).

He must meet both requirements to be successful.  The rule's first requirement means I look at the facts alone to see if any genuine disputes as to any material facts exist.  The rule's second requirement means I look at the facts together with the law to determine whether Hicks is entitled to a judgment as a matter of law.

A dispute about a material fact is genuine where the evidence presented is such that a reasonable jury could return a verdict for the non-movant.[20]  I make this determination under the evidentiary standard applicable to the case in a trial on the merits.  Thus, in most civil cases including this one, a dispute over a material fact is genuine where a reasonable jury could find for the non-movant by a preponderance of evidence.[21]

In adjudicating the motion, I accept the evidence Stoutamire submits as true, and examine the facts and draw all reasonable inferences from those facts in a light most favorable to him.[22]  "In the qualified immunity context, 'this usually means adopting . . . the plaintiff's version of the facts,' . . . unless the plaintiff's version is 'blatantly contradicted by the record, so that no reasonable jury could believe it. . . .' "[23]

Hicks bears the burden of production with respect to evidentiary support for his

---

[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[21] *Anderson*, 477 U.S. at 252.

[22] *Pelland v. Wal-Mart Stores, Inc.*, 282 F. Supp. 3d 1019, 1023 (N.D. Ohio 2017), *appeal dismissed*, 2018 WL 2246649 (6th Cir. Apr. 2, 2018) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992)); *84 Video/Newsstand, Inc. v. Sartini*, No. 1:07 CV 3190, 2009 WL 10656014, at *5 (N.D. Ohio June 22, 2009), *aff'd,* 455 F. App'x 541 (6th Cir. 2011), *cert. denied*, 565 U.S. 1235 (2012) (citations omitted); *Santana-Guillen v. Johnson & Johnson*, No. 3:07 OE 40157, 2009 WL 1545791, at *2 (N.D. Ohio June 3, 2009) (citations omitted).

[23] *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013) (quoting *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007)) (opinion by Oliver, CJ. sitting by designation).

motion, and must provide sufficient evidence such that a reasonable jury could rule in his favor.  Stoutamire in turn has an affirmative duty to point out specific facts in the record that establish a genuine issue of material fact.[24]  Summary judgment is appropriate if Stoutamire fails to present evidence sufficient to establish the existence of an element essential to his case and on which he would bear the evidentiary burden of proof at trial.[25]

In sum, summary judgment is proper if materials in the record, including the pleadings, depositions, documents, electronically stored information, stipulations, answers to interrogatories, and admissions on file, together with the affidavits or declarations, if any, show that there is no genuine issue as to any material fact and that Hicks is entitled to a judgment as a matter of law.  All evidence must be viewed in the light most favorable to Stoutamire, the nonmoving party.[26]

*The Eighth Amendment, excessive force, and qualified immunity.*  The next two threads—the Eighth Amendment and excessive force—are intertwined in prisoner rights cases.  Prisoners look to the Eighth Amendment's prohibition against cruel and unusual punishment if they believe prison officials have injured them through the use of excessive force.[27]  Lawsuits brought pursuant to 42 U.S.C. § 1983 like this one[28] give prisoners a way to vindicate constitutionally protected rights they believe have been violated.

---

[24] *Santana-Guillen*, 2009 WL 1545791; *Anderson*, 477 U.S. at 252 (noting that the non-movant must show more than "[t]he mere scintilla of evidence" in opposing a motion for summary judgment).

[25] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[26] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[27] *See*, *e.g.*, *Pelfrey v. Chambers*, 43 F.3d 1034, 1036–37 (6th Cir. 1995); *Cornwell v. Dahlberg*, 963 F.2d 912, 915–16 (6th Cir. 1992).

[28] ECF #1-1, at 1.

One way defendants employed by the state support summary judgment is to claim qualified immunity, as Hicks does here.[29]  As he points out, qualified immunity allows prison officials to carry out their duties without fear of personal liability but still protects the public from incompetent public officials who violate clearly established legal rights.[30]  Qualified immunity gives Hicks as a state prison official two ways to defend against Stoutamire's lawsuit.  Hicks can deny having violated Stoutamire's Eighth Amendment rights, as he does.[31]  If that denial is unsuccessful, the defendant can still claim qualified immunity to bar the plaintiff's claim.  A finding that Hicks's qualified immunity bars Stoutamire claim could mean that Hicks is entitled to judgment as a matter of law, thus meeting the second requirement of Rule 56.

Claim one arises while Hicks is working as a lieutenant at the Mansfield Correctional Institution and as an employee of the Ohio Department of Rehabilitation and Corrections.[32]  Hicks therefore benefits from qualified immunity.

Does that end the summary judgment analysis and require me to recommend that Hicks's motion be granted? No, because the law still prohibits certain conduct even though those who engage in it enjoy qualified immunity.  To determine the boundaries of permissible conduct and thus the limits of qualified immunity, the analysis asks two questions: " 'whether a constitutional right would have been violated on the facts alleged' "

---

[29] ECF #24, at 18; ECF #6, at 2; ECF #27, at 11.
[30] ECF #24, id.  See, e.g., Malley v. Briggs, 475 U.S. 335, 341 (1986).
[31] ECF #6, at 1.
[32] ECF #24-7, at 1.

and "whether the right at issue was clearly established at the relevant time."[33] The law allows me to examine these two questions in either order.[34]

In defining these boundaries, I must take into account that life inside a prison is, of course, different from life outside in the community. Inside a prison, "not every shove or restraint gives rise to a constitutional violation."[35] The law recognizes the important public policy of maintaining order and discipline in prisons. "The maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law; however, 'a violation of the Eighth Amendment will nevertheless occur if the offending conduct reflects an unnecessary and wanton infliction of pain.' "[36] The core of my inquiry then is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[37]

Factors courts consider in determining whether the prison official's conduct crosses the line into an Eighth Amendment violation include the extent of injury suffered by an inmate, the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials"[38] and "any efforts made to temper the severity of a forceful response,"[39] and a balancing of the threat

---

[33] *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). *See also Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014); *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 529 (6th Cir. 2018).

[34] *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). *See also Cordell*, 759 F.3d at 580.

[35] *Cordell*, 759 F.3d at 580 (citing *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986)).

[36] *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (quoting *Pelfrey*, 43 F.3d at 1037 (internal quotation marks and alterations omitted)).

[37] *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

[38] *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

[39] *Id.*

10

the unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force.[40]  "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."[41]

The context of a populated and sometimes crowded prison is also a consideration. "Because prison officials 'must make their decisions in haste, under pressure, and frequently without the luxury of a second chance,' we must grant them 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' "[42]

I now turn my attention to the two-part inquiry to determine whether Hicks's conduct exceeds the boundaries of permissible conduct and thus the limits of his qualified immunity.  If in using the guideposts under Fed. R. Civ. P. 56 I find he has exceeded those limits, then Hicks is not entitled to a judgment in his favor on the basis of his qualified immunity.

*Question #1: whether a constitutional right would have been violated on the facts alleged.*  In addressing this first question of an alleged Eighth Amendment violation based on excessive force, our Circuit has divided the analysis into an objective component and a subjective component.[43]  The objective component "requires the pain inflicted to be

---

[40] *See Hudson*, 503 U.S. 6-7; *Pelfrey*, 43 F.3d at 1037; *Caldwell v. Moore*, 968 F.2d 595, 599–601 (6th Cir. 1992); *Whitley*, 475 U.S. at 320–22; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993); *Combs*, 315 F.3d at 557.

[41] *Hudson*, 503 U.S. at 7.

[42] *Combs*, 315 F.3d at 557 (quoting *Hudson*, 503 U.S. at 6 (quotation marks omitted) (quoting *Whitley*, 475 U.S. at 320, 321–22)).

[43] *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001); *Cordell*, 759 F.3d at 580.

'sufficiently serious.' "[44]  "The objective component of an Eighth Amendment claim is therefore contextual and responsive to 'contemporary standards of decency.' "[45]  The Supreme Court has explained, "In the excessive force context, society's expectations are different.  When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . .  This is true whether or not significant injury is evident."[46]

The subjective component "focuses on the state of mind of the prison officials."[47]  This component asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[48]  Again, though, not every push or shove is actionable.  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' "[49]

On both components, the law requires me at this stage of the litigation to view the evidence in a light most favorable to Stoutamire.  In doing so, I find that a reasonable jury could find that Stoutamire has demonstrated that Hicks has violated Stoutamire's constitutional right to be free from excessive force on the facts alleged.  My analysis is

---

[44] *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).
[45] *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).
[46] *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327).
[47] *Williams*, 631 F.3d at 383.
[48] *Hudson*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).
[49] *Hudson*, 503 U.S. at 9–10 (quoting *Whitley*, 475 U.S. at 327 (quoting *Estelle*, 429 U.S. at 106) (internal quotation marks omitted)).

complicated by genuine disputes as to material facts associated with the use of force by Hicks—a point I take up below.  Nevertheless, accepting as true the facts Stoutamire alleges, getting sprayed with mace in the face, being twice punched in the stomach and once in the face, having your arm twisted, having your wrist twisted until you thought it was going to pop, having your fingers twisted until you thought they were going to break, and then having your head pushed into a cabinet and two doors are not *de minimis* injuries.[50]

Nothing in the allegations, moreover, seems to have been done to maintain or restore discipline.  A jury could reasonably conclude that based on the facts Stoutamire alleges— indeed, based on some of the facts Hicks alleges—Hicks and his two co-workers intentionally roughed up Stoutamire because they were mad Stoutamire had talked back to and (perhaps) refused to give his name and inmate number to one of their fellow corrections officers.  Stoutamire admits he was written up for talking back to the corrections officer. That Hicks and others took it upon themselves to rough up Stoutamire as a further punishment and retaliation—perhaps to teach him a lesson or perhaps to take out their anger at him or perhaps simply to scare him—could reasonably provide a jury a basis for finding Hicks liable for Stoutamire's injuries.  Stoutamire's allegation that Hicks had him transported to the captain's office because there were no cameras could further support a verdict for Stoutamire.

No one denies that "prison officials may use appropriate force to regain control of

---

[50] ECF #24-1, at 33-34.

an aggressive inmate."[51]  How much force was actually used remains in dispute, as I discuss below.  In fact, whether any force at all was needed while Stoutamire was in the captain's office with Hicks and his two co-workers is disputed.  The law on summary judgment requires me to accept as true the allegations Stoutamire makes, and one of those allegations is that he was never belligerent towards Hicks.  Somehow, though, Stoutamire ends up on the floor of the office once and perhaps two times, perhaps after being tackled and punched in both the stomach and face.  It is undisputed that Stoutamire entered the captain's office handcuffed.  That Hicks and his two co-workers apparently lost control of Stoutamire after the handcuffs came off is one of the disputed facts.  According to Hicks, Stoutamire became belligerent and threatened Hicks.  According to Stoutamire, he was compliant, but Hicks and his two co-workers used the opportunity away from surveillance cameras to rough him up.  Whether Stoutamire was aggressive or belligerent or both is not definitively answered in the record.  Whether Hicks even needed to use force to control Stoutamire is not answered in the record.  Whether the amount of force Hicks used was reasonable under the circumstances is also not answered in the record.  A jury verdict in Stoutamire's favor would be reasonable if the jurors were to accept Stoutamire's side of the story.

But my analysis must continue.  The boundaries of permissible conduct and thus the limits of qualified immunity are demarcated by two lines of inquiry.  I thus move to the second question of the analysis.

*Question #2: whether the right at issue was clearly established at the relevant time.*

---

[51] *Cordell*, 759 F.3d at 581 (citing *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010)).

Even if a reasonable jury could decide that Hicks violated Stoutamire's Eighth Amendment rights, Hicks is still protected by his qualified immunity if those Eighth Amendment rights were not clearly established on November 11, 2014 when the incident took place. "For a right to be clearly established, 'the right's contours [need to be] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' "[52]

Stoutamire's claim one alleges what amounts to being roughed up gratuitously by three prison officials for the prior troubles he caused one of their fellow guards. Stoutamire alleges having been maced and punched even though he was not out of line. Assuming this to be true, as I must at this stage, "the law [has] long placed the deputies on notice that such behavior [gratuitously pepper spraying an inmate] was unlawful."[53] There is no reason to treat gratuitous punching any differently. No prison guard would believe that gratuitous injury of a prisoner was lawful conduct. Indeed, in some instances, it can even be criminal.[54] A reasonable jury could find that the prison officials' conduct was gratuitous if they find that Stoutamire was not acting belligerently and that the captain's office where the incident occurred did not have cameras.

Accordingly, I find that Stoutamire's rights were clearly established as of November

---

[52] *Cordell*, 759 F.3d at 587 (quoting *Plumhoff*, 572 U.S. at 778–79 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011))).

[53] *Hanson*, 736 F. App'x at 537 (citing *Adams v. Metiva*, 31 F.3d 375, 386–87 (6th Cir. 1994))

[54] *See*, *e.g.*, *Easterly v. Budd*, No. 4:06 CV 00186, 2006 WL 2404143, at *3–4 (N.D. Ohio Aug. 18, 2006) (adjudicating a statute of limitations motion to dismiss where guards roughed up an inmate and eventually entered into plea agreements for their roles in utilizing excessive force at the direction of senior management).

11, 2014.  In light of the results of the two lines of inquiry regarding qualified immunity as a defense, I find that granting qualified immunity for Stoutamire's excessive force claim is not supported by either the law or the facts at this stage.

*Genuine disputes as to material facts.*  Without being able to assert that he is entitled to judgment as a matter of law at least on the grounds of qualified immunity, Hicks loses his motion for summary judgment.  Assuming, though, that he successfully argues an alternative defense—as discussed in the next part of this report—Hicks still must meet the other requirement of Fed. R. Civ. P. 56: showing that there is no genuine dispute as to any material fact.  On this requirement, Hicks faces a very steep climb.

The record as it stands contains no video or audio recording of what transpired in the captain's office on November 11, 2014.  Consequently, nothing Stoutamire alleges is blatantly contradicted by record evidence.  His version of the facts at this stage suggests a situation where prison officials roughed him up for causing problems for another corrections officer.  At trial, Stoutamire's § 1983 action rises or falls on a number of material facts.  At this stage, though, there is significant, genuine dispute over those material facts.  The chart below summarizes some of those material facts and the positions both Stoutamire and Hicks have taken.

| Facts | Stoutamire's Versions | Hicks's Versions |
|---|---|---|
| *Earlier encounter with C/O Wensink* | C/O Wensick wrote up Stoutamire for having an exchange of words. | Stoutamire was disruptive and made threats towards C/O Wensick. |
| *Upon entering captain's office* | Officers uncuffed Stoutamire, and he placed his hands behind his back | Officers uncuffed Stoutamire, and was asked to write a use of force |

|  | | |
|---|---|---|
|  | after being told he'd be maced if he made any sudden moves. | statement regarding the incident with C/O Wensink. |
| *Questions about encounter with C/O Wensink* | Lt. Hicks said Stoutamire was giving his C/Os problems, so he pushed Stoutamire into a wall, Lt. Ross hit him in the stomach twice, and Lt. Hicks hit him in the cheek with the result of Stoutamire ending up on the floor. | Stoutamire became belligerent and hostile when Lt. Hicks asked him why he was refusing to give his name and number to C/O Wensink, but no one struck or punched Stoutamire. |
| *Absence of cameras in captain's office* | Stoutamire gets up from the floor, looks around to see if there are any cameras in the office, and Lt. Hicks tells him there are no cameras there. | Nothing noted. |
| *Lt. Hicks's request for Stoutamire's name and inmate number* | While holding a can of mace, Lt. Ross told Stoutamire to put his hands behind his back, which he did, and Lt. Hicks asked him for his name and inmate number, which he gave. | Lt. Hicks ordered Stoutamire to tell him his name and inmate number, and Stoutamire responded by saying "I ain't taking nobody's shit" and said he doesn't have to tell anyone his name. |
| *Events following the request for Stoutamire's name and inmate number* | Lt. Hicks pulled out his mace from its holster and hit the safety switch. | Stoutamire quickly stepped towards Lt. Hicks in a hostile manner with his hands up, and Lt. Hicks immediately used a flinch block response to back away Stoutamire from him. |
| *Subsequent verbal exchange* | Stoutamire said he knew his rights and knew he could not be maced for no reason to which Lt. Hicks responded by saying this was Mansfield and he | Stoutamire continued to be loud and placed his hands in a fighting stance appearing to be getting ready to strike Lt. Hicks. |

17

| | | |
|---|---|---|
| | could do whatever he wanted. | |
| *Subsequent physical encounter* | Lt. Hicks maced Stoutamire in the face, and the officers then tackled him and knocked him to the ground telling him to stop resisting even though he wasn't resisting; during the encounter, the officers roughed him up, bent his arms and fingers in painful positions, bent his wrist to the point it felt it would pop, and bent his two smallest fingers to the point of breaking. | Lt. Hicks perceived Stoutamire's actions to be a danger to Lt. Hicks's physical well-being, so he used a short burst of OC spray to Stoutamire's facial area in an effort to protect Lt. Hicks and to restore order to the situation. |
| *End of office encounter* | The above methods were applied all the way to the clinic; once there, the officers hit Stoutamire's head twice on cabinets and then tried to force his face under hot water; once taken out of the room, one of the officers pushed Stoutamire into both doors allowing his head to hit the doors extremely hard. | Lt. Ross and Lt. Hicks were able to cuff Stoutamire after a brief struggle on the floor, Stoutamire was escorted to the clinic, and no injuries were noted except exposure to OC spray. |

On this record, I find that these conflicting versions of what occurred on November 11, 2014 reflect issues of material fact that require me to recommend that Hicks's motion for summary judgment on the excessive force claim be denied.  According to Stoutamire's version of the events, Hicks's use of force against him was malicious and nothing more than retaliation for Stoutamire's prior run-in with C/O Wensink.  According to Hicks's version of the events, only a small burst of OC spray was used to control a belligerent and

18

uncooperative inmate.

Viewing the record evidence presented to me in the light most favorable to Stoutamire,[55] a jury could reasonably infer that Stoutamire was injured by Hicks's use of force, and that Hicks intended to inflict those injuries in retaliation for Stoutamire's run-in with Hicks's co-worker.  Summary judgment in favor of defendants is not appropriate if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain."[56]  In considering such factors as the reasons for the use of force, the type and amount of the force used, the proportionality of the force to Stoutamire's conduct, and the extent of Stoutamire's injuries, a fair-minded jury could return a verdict for Stoutamire on his Eighth Amendment excessive force claim.  Determining whose story is the right one is best left to a jury.  Accordingly, I find that there are genuine disputes on a number of material facts that require me to recommend that Hicks's motion for summary judgment as to claim one be denied.

## IV.

*Other Defenses to Stoutamire's Claim.*  Hicks argues two other defenses in his summary judgment motion.  Like qualified immunity, these defenses would bar Stoutamire's excessive force claim against him.  For the reasons below, I find that neither of these other defenses bars Stoutamire's claim or entitles Hicks to judgment as a matter of law at this stage of the litigation.

---

[55] *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587.
[56] *Whitley*, 475 U.S. at 322.

19

The first defense is that the Eleventh Amendment bars Stoutamire's claim one against Hicks in his official capacity.[57]  The point Hicks raises is of no consequence for purposes of his summary judgment motion in light of an amendment to the complaint.  Nine months after he had filed his complaint, Stoutamire filed a motion to amend it "to include in my complaint that I am sueing all defendants in their individual compacity."[58]  The District Judge granted this motion during a status conference.  "The complaint is hereby amended to clarify that the named defendants are being sued in their individual as well as their official capacities.  (ECF #1)."[59]  Accordingly, this defense does not bar Stoutamire's claim one against Hicks.

The second defense arises from the Supreme Court's opinion in *Heck v. Humphrey*[60] where the Court held that to recover damages for an allegedly unconstitutional conviction or imprisonment or other harm caused by actions whose unlawfulness would render the conviction or sentence invalid, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."[61]

---

[57] ECF #24, at 19.
[58] ECF #15, at 1.
[59] ECF #16, at 1.
[60] *Heck v. Humphrey*, 512 U.S. 477 (1994).
[61] *Heck*, 512 U.S. at 486–87.

Three years later, the Supreme Court applied this principle to hold that a prisoner's claim for damages and declaratory relief challenging the validity of the administrative procedures used to deprive him of good-time credits is not cognizable under 42 U.S.C. § 1983.[62]  Without citing this later case, Hicks uses the holding in *Heck* to argue that a court victory for Stoutamire would in effect invalidate the decision by the prison's Rules Infraction Board that Stoutamire had violated Rule 08 of the Inmate Rules of Conduct (threatening bodily harm to another, with or without a weapon).[63]

I find that Hicks's argument does not bar Stoutamire's excessive force claim or entitle Hicks to judgment as a matter of law.  As an initial matter, Hicks's attachments are unclear as to whether the RIB found that Stoutamire had violated Rule 08 of the Inmate Rules of Conduct for threatening Hicks or found that he had resisted.  Both are cited in different documents as the RIB's dispositions.[64]  Regardless, Stoutamire's claim one is not seeking to reverse any administrative finding.  He is instead seeking compensation for excessive force allegedly used against him in the November 11, 2014 incident.  A verdict in his favor in this case would not render invalid any disciplinary finding against him.

For example, a reasonable jury could find that Stoutamire used language or conduct that Hicks perceived as threatening (thus violating prison rules), but still find that Hicks's

---

[62] *Edwards v. Balisok*, 520 U.S. 641 (1997).  *See also Muhammad v. Close*, 540 U.S. 749 (2004) (holding that habeas exhaustion requirement imposed by *Heck* did not apply to prisoner's § 1983 suit that did not seek a judgment at odds with prisoner's conviction or with the state's calculation of time to be served in accordance with the underlying sentence).

[63] ECF #24, at 20.  *See also* ECF #24-1, at 39; ECF #24-2, at 4.

[64] *Compare* ECF #24-2, at 8, 9 with *id.* at 7.

response to that threat far exceeded the nature of the threat.  A reasonable jury could make a similar finding of fact if it decided Stoutamire had resisted but concluded that Hicks's response was nevertheless out of line.  Given the breadth of the timeline encompassed in claim one, a reasonable jury could also find that Hicks's conduct before any threats by Stoutamire constituted a violation of Stoutamire's Eighth Amendment rights; or after once Stoutamire was back in handcuffs and could no longer resist or threaten.[65]

Hicks's argument also overlooks the analytical distinction the Court of Appeals made with regard to the principle in *Heck* and excessive force claims brought in § 1983 lawsuits.  The Court of Appeals explained this distinction as follows:

> [T]he question of the degree of force used by the prison guard is analytically distinct from the question of whether [inmate] violated prison rules by keeping his hand in the food slot and thus preventing [prison C/O] from properly closing the food slot. For example, [inmate's] violation presumably would not have justified the guard in hacking off the offending hand with an ax, or spraying the cell with sub-machine gun fire through the food slot. Although [prison C/O's] actions were clearly not of such an outrageous character, at this stage it is not beyond the realm of possibility that [inmate] can prove that [prison C/O] violated his Eighth Amendment rights by slamming the food slot door on his hand in such a manner as to inflict unnecessary pain in a wanton manner, not justified by prison necessity or the degree of violation.[66]

In short, Stoutamire's § 1983 lawsuit does not relitigate the administrative disciplinary decisions issued against him.  Both can stand side by side without

---

[65] *See*, *e.g.*, *Goudlock v. Blankenship*, slip op. 2016 WL 3748731, at *5 (N.D. Ohio Apr. 19, 2016), *overruling objections*, slip op. 2016 WL 3668008 (N.D. Ohio July 11, 2016), *affirming judgment*, slip op. 2017 WL 7116970 (6th Cir. Sept. 12, 2017) (report and recommendation applying *Heck* to prisoner's claim as it applied to events before prisoner was handcuffed but not to events afterwards).

[66] *Nelson v. Sharp*, 182 F.3d 918 (table), 1999 WL 520751, at *2 (6th Cir. 1999).

contradiction.

## V.

This case and this recommendation no doubt seem like déjà vu for both sides to this lawsuit.[67]   At this stage in this case, Hicks has failed to demonstrate that there are no genuine disputes as to material facts or that he is entitled to judgment as a matter of law on Stoutamire's excessive force claim.   Therefore, for the foregoing reasons, I recommend that Hicks's motion for summary judgment as to the excessive force claim[68] be denied.


Dated: September 9, 2021                               s/ William H. Baughman, Jr.
                                                       United States Magistrate Judge

---

[67] *See Stoutamire v. Joseph*, slip op. 2012 WL 6611441, at *10-11 (S.D. Ohio Dec. 19, 2012), *adopting report and recommendation sub nom. Stoutamire v. Adkins*, slip op. 2013 WL 991897, at *7 (S.D. Ohio Mar. 13, 2013) (same plaintiff brought similar § 1983 claims against prison officials and nurses on similar allegations occurring while plaintiff was incarcerated at the Southern Ohio Correctional Facility, excessive force claims survived summary judgment, though a jury found for the defendants two years later).
[68] ECF #24.

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of service of this notice.  Failure to file timely objections within the specified time shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.[*]

---

[*] *See* Local Rule 72.3; *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).